UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Bridgeport Music Inc., et al.,** | ) |
| **Plaintiffs,** | ) |
| | ) Civil Action No. 03-72211 |
| vs. | ) Hon. Paul D. Borman |
| | ) Magistrate: |
| **Rashaam A. Smith a/k/a Esham A. Smith** | ) Judge R. Steven Whalen |
| **p/k/a Esham, et al.,** | ) |
| **Defendants,** | ) |

SHARI FRIEDMAN LESNICK (P39746)
Attorney for Plaintiffs Bridgeport Music, Inc.,
Southfield Music, Inc and Westbound Records, Inc.
30700 Telegraph Road., Ste. 4646
Bingham Farms, MI 48025
(248) 646-5511

KING & BALLOW
Richard S. Busch (TN BPR # 14594)
Attorneys for Plaintiffs Bridgeport Music, Inc.,
Southfield Music, Inc. and Westbound Records, Inc.
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201
(615) 259-3456

### DECLARATION OF JANE PETERER IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO DEFENDANT RASHAAM A. SMITH

Jane Peterer, having personal knowledge of the facts contained in this declaration, states as follows:

1. I am over the age of 18 and competent to testify as to the matters stated herein. Jane Peterer Music Corporation, of which I am the owner and President, is contracted to administer the

Peterer Music Corporation has been the Bridgeport/Southfield administrator for 19 years.

2. I have been involved in the music industry and music publishing for my entire professional career, encompassing 48 years of experience. Particularly, I have acted as a publisher of musical compositions, administrator of catalogs of musical compositions, owner of a company which releases sound recordings, general manager and producer for record companies, and even musical book publisher during this time. Through my experiences with these companies, licensing compositions and recordings, collecting royalties and analyzing financial information related to royalties detained from the exploitation of intellectual property, I have become familiar with the industry practices by record companies, publishers, administrators, and performing rights organizations as well as the identities of many of the different companies participating in the music industry.

3. Defendant Rashaam A. Smith a/k/a Esham A. Smith a/k/a Esham ("Esham") is a songwriter, publisher and/or administrator who owns in whole or in part, the Infringing Compositions entitled "B*tch Stop Lyin," "In the Name of RLP," "Toss-Up," "Bitches On My Mind," "You and Me," "Sunshine," "Sunshine (Remix)," "Get on Down," "KKKill the Fetus," "If This Ain't Hell," "Game of Death," "Sell Me Yo Soul a/k/a Sell Me Your Soul a/k/a Sell Me Yo Sole," "Play Dead," "Knockin' Em Dead," "Hold U Up," "Fallen Angel," and "Mad At the World" which appear on the Infringing Records "Life After Death" and "Doubelieveingod" performed by rap artist Natas and the Infringing Records entitled "Boomin' Words from Hell," "KKKill the Fetus," "Sunshine (Single)," "Judgement Day-Volume 1-Day," "Judgement Day-Volume 2-Night," "Bruce Wayne: Gotham City 1987," and "Dead Flowerz," as set forth in the plaintiffs' Complaint and Exhibit A thereto.

4. As a music publisher and/or administrator, Esham earns income from his songs by

2

finding artists and producers to record or sample the compositions, placing the compositions in movies and television programs, issuing licenses for such uses of the compositions, collecting money earned from the compositions, administering the compositions and paying writers and publishers their respective percentages of the royalties.

5. In the United States, one major source of income for a music publisher is through the issuance of mechanical licenses. Mechanical licenses are the music publisher's permission allowing a record company to record a particular composition on albums, tapes, and compact discs. At present, the U.S. statutory rate to include a composition on a sound recording is eight and one-half cents ($.085) per composition, per album, tape, or compact disc sold.

6. Another major source of income for music publishers is performance royalties collected by performing rights organizations. Performance royalties are amounts various venues (i.e., bars, restaurants, etc.) pay to play music publishers' compositions in their establishments. Each establishment would be required to pay the copyright holder a performance royalty for the use of the music; however, the vast number of establishments playing songs, coupled with the massive catalogs of songs being performed, makes policing and enforcement of performance rights cumbersome and prohibitively expensive for individual publishers. In lieu of this burdensome, individual licensing, music publishers affiliate with one of the three performing rights organizations: ASCAP, BMI or SESAC. These organizations negotiate and sell blanket licenses to establishments playing copyrighted music, and, in turn, based on proprietary formulas, pay the royalties generated from these licenses to the music publishers.

7. On a worldwide basis, there are additional sources of income for a music publisher. These include income from mechanical royalties, fees from television and film synchronization licenses, advertising licenses, ring-tone licenses, game licenses, toy licenses and

miscellaneous income such as print, as well as income from new technologies such as digital juke boxes, digital downloading, streaming and a number of other sources.

8. To determine the amount of damages in this action, therefore, plaintiffs would need to know the total number of sales for each of the Infringing Record that embodies the Infringing Compositions. Plaintiffs also would need to know the total amount of performance royalties received by Esham. Plaintiffs are unable to even remotely estimate or accurately determine the amounts earned by Esham from mechanical royalties on a worldwide basis, fees for television, film, advertising and performing rights income for the infringing compositions listed above since those numbers are within the exclusive control of Esham. Licenses are negotiated privately between Esham and the party using the work, and are not matters of public record. Even when plaintiffs learn that the infringing compositions have been licensed for use, whether on a record, in print or for use on television or in film, plaintiffs have no access to information which would evidence the number of records sold, the public performance fees paid, the synchronization fees negotiated and paid or any other income figures generated by the commercial exploitation of the infringing compositions. The income information is not accessible to plaintiffs except through the defendant's own records, to which these plaintiffs do not now have, nor ever could have had, access, except through the legal process. Since Esham failed to plead or otherwise respond, plaintiffs have no ability to measure their actual damages in this action, and, therefore, must rely on the Copyright Act's allowance for statutory damages.

9. Bridgeport Music, Inc. is the owner, in whole or in part, of the copyrighted musical compositions "Gangsta Gangsta," "Flashlight," "Atomic Dog," "Nappy Dugout," "You're Getting A Little Too Smart," "(Not Just) Knee Deep," "Maggot Brain," "Free Your Mind & Your Ass Will Follow," "The Big Bang Theory," "Give Up the Funk (Tear the Roof Off

4

the Sucker)," "The Mothership Connection (Star Child)" and "Cosmic Slop." Southfield Music, Inc. is the owner, in whole or in part, of the copyrighted musical compositions "Atomic Dog," "Maggot Brain" and "The Big Bang Theory." Westbound Records is the owner of the copyrighted sound recordings of "You're Getting A Little Too Smart," "Maggot Brain" and "Free Your Mind and Your Ass Will Follow." Esham is responsible for at least three separate acts of infringement with respect to each of plaintiffs' works, i.e. the copying, reproduction, licensing for the distribution and performing of plaintiffs' works without permission.

10. The musical compositions and sound recordings that are the subject of this action are of a genre of music known as "rap." In rap music, the artist typically speaks along with one or more pre-recorded musical compositions. To record the rap songs at issue, the rap artists copied portions of prior master sound recordings of plaintiffs' earlier musical compositions directly onto new sound recordings, and then the artists "rapped" on top, a procedure called "sampling." Plaintiffs Bridgeport and/or Southfield are the owners of a catalogue of musical compositions of George Clinton, Parliament/Funkadelic and Ohio Players. Westbound is the owner of a catalogue of sound recordings of Funkadelic, Ohio Players and Detroit Emeralds. These compositions and sound recordings are widely recognized as the most extensively sampled by contemporary rap and hip-hop artists so much so that they are said to be the foundation of modern rap music. In my experience, given the sheer number of infringements by Esham, it is readily apparent to me that defendant's infringements are willful.

11. I am aware that the Bridgeport and Southfield musical compositions and the Westbound sound recordings named in paragraph 6 were copied and then licensed for reproduction and distribution by Esham and released on the Reel Life Productions Infringing Records identified in paragraph 3 above. Also, Esham, as a solo artist, and as a member of

NATAS performs each othe infringing compositions. Before the commencement of this action and again in preparation for the hearing on the default judgment, I personally conducted Internet searches to ascertain the availability of said infringing works. Since the initial releases, and continuing to the present date, the Infringing Records "Life After Death," "Doubelieveingod," "Boomin' Words from Hell," "KKKill the Fetus," "Sunshine (Single)," "Judgement Day-Volume 1-Day," "Judgement Day-Volume 2-Night," "Bruce Wayne: Gotham City 1987" containing the Infringing Compositions and Sound Recordings named in paragraph 3 above continue to be reproduced, distributed and available for sale. For example, "Life After Death" and "KKKill the Fetus" can be found available for sale at www.amazon.com; a true and accurate copy of the relevant pages from Amazon.com is attached hereto as collective Exhibit A.

12. Due to the inability of plaintiffs to access actual income figures for this infringing work, Bridgeport, Southfield and Westbound elect statutory damages and respectfully request this Court to award $150,000.00 for each separate act of willful infringement against defendant Esham, or a total monetary damage award of $4,650,000.00 for Bridgeport Music Inc., $900,000.00 for Southfield Music, Inc. and $450,000.00 for Westbound Records, Inc. This award is reasonable when considering the potential earnings of a musical composition. A record that sells one million copies generates $80,000.00 in mechanical royalty income ($0.08 x 1 million), and approximately $300,000.00 to $400,000.00 in performance royalties alone. Effective January 1, 2004, the U.S. statutory rate increased to $0.085 thus, allowing increased earnings.

13. Bridgeport, Southfield and Westbound also request the Court to declare that they are the owner of 100% of the entirety of Esham's ownership interest in the copyrights of the Infringing Compositions as an unauthorized derivative works of Bridgeport, Southfield and

Westbound's copyrighted works named hereinabove.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of February 2004 at Burlington, Vermont.

Jane Peterer