

b
Exh A

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Bridgeport Music Inc., et al.,      )
                                 )

        Plaintiffs,      )
                                 )    Civil Action No. 03-72211

vs.                          )    Hon. Paul D. Borman
                                 )    Magistrate:

Rashaam A. Smith a/k/a Esham A. Smith   )      Judge R. Steven Whalen
p/k/a Esham, et al.,         )
                                 )

        Defendants,     )

---

SHARI FRIEDMAN LESNICK (P39746)
Attorney for Plaintiffs Bridgeport Music, Inc.,
Southfield Music, Inc and Westbound Records, Inc.
30700 Telegraph Road., Ste. 4646
Bingham Farms, MI 48025
(248) 646-5511

KING & BALLOW
Richard S. Busch (TN BPR # 14594)
Attorneys for Plaintiffs Bridgeport Music, Inc.,
Southfield Music, Inc. and Westbound Records, Inc.
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201
(615) 259-3456

---

## DECLARATION OF JANE PETERER IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO DEFENDANT REEL LIFE PRODUCTIONS, INC.

Jane Peterer, having personal knowledge of the facts contained in this declaration, states as follows:

    1.      I am over the age of 18 and competent to testify as to the matters stated herein. Jane Peterer Music Corporation, of which I am the owner and President, is contracted to administer the

Peterer Music Corporation has been the Bridgeport/Southfield administrator for 19 years.

2.    I have been involved in the music industry and music publishing for my entire professional career, encompassing 48 years of experience.   Particularly, I have acted as a publisher of musical compositions, administrator of catalogs of musical compositions, owner of a company which releases sound recordings, general manager and producer for record companies, and even musical book publisher during this time.   Through my experiences with these companies, licensing compositions and recordings, collecting royalties and analyzing financial information related to royalties detained from the exploitation of intellectual property, I have become familiar with the industry practices by record companies, publishers, administrators, and performing rights organizations as well as the identities of many of the different companies participating in the music industry.

3.    Defendant Reel Life Productions is a record label and/or entertainment company which has an ownership interest in the Infringing Sound Recordings of Infringing Compositions entitled "B*tch Stop Lyin," "In the Name of RLP," "Toss-Up," "Bitches On My Mind," "You and Me," "Sunshine," "Sunshine (Remix)," "Get on Down," "KKKill the Fetus," "If This Ain't Hell," "Game of Death," "Sell Me Yo Soul a/k/a Sell Me Your Soul a/k/a Sell Me Yo Sole," "Play Dead," "Knockin' Em Dead," "Hold U Up," "Fallen Angel," and "Mad At the World" which appear on the Infringing Records "Life After Death" and "Doubelieveingod" performed by rap artist Natas and the Infringing Records entitled "Boomin' Words from Hell," "KKKill the Fetus," "Sunshine (Single)," "Judgement Day-Volume 1-Day," "Judgement Day-Volume 2-Night," "Bruce Wayne: Gotham City 1987," and "Dead Flowerz," as set forth in the plaintiffs' Complaint and Exhibit A thereto.

4.    As a record label and/or entertainment company, Reel Life Productions earns

income from the sale and distribution, and the licensing for sale and distribution of sound recordings, among other uses such as issuing master use licenses for their sound recordings for placement in movies and television programs and as samples in other works.   Reel Life Productions, Inc. collects money earned from their sound recordings and then pays artists, producers, writers and publishers, among others, their respective percentages and/or fees of the money earned.  On a worldwide basis, there are additional sources of income for a record label and/or entertainment company.  These include income from fees from television and film master use licenses, advertising licenses, ring-tone licenses, game licenses, toy licenses and miscellaneous income such as print, as well as income from new technologies such as digital juke boxes, digital downloading, streaming and a number of other sources.

   5.  To determine the amount of damages in this action, therefore, plaintiffs would need to know the total number of sales for each of the Infringing Record, Single or Digital Phonorecord Delivery that embodies the Infringing Sound Recordings of the Infringing Compositions. Plaintiffs also would need to know the total amount of licensing fees received by Reel Life Productions.  Plaintiffs are unable to estimate remotely or accurately the amounts earned by Reel Life Productions from these various sources of income on a worldwide basis including fees for television, film, advertising and sales and distribution, or licensing for sale and distribution of all of the Infringing Sound Recordings and Infringing Records identified above since those numbers are within the exclusive control of Reel Life Productions.  Sales prices, distribution agreements and licenses are negotiated privately between Real Life Productions and the party using the work, and are not matters of public record.  Even when plaintiffs learn that one of the Infringing Sound Recordings have been licensed for use, whether on a record, in print or for use on television or in film, plaintiffs have no access to information which would evidence

3

the number of records sold, the license fees paid, the synchronization fees negotiated and paid or any other income figures generated by the commercial exploitation of the Infringing Sound Recordings named above. The income information is not accessible to plaintiffs except through the defendant's own records, to which these plaintiffs do not now have, nor ever could have had, access, except through the legal process. Since Reel Life Productions failed to plead or otherwise respond, plaintiffs have no ability to measure their actual damages in this action, and, therefore, must rely on the Copyright Act's allowance for statutory damages.

6.      Bridgeport Music, Inc. is the owner, in whole or in part, of the copyrighted musical compositions "Gangsta Gangsta," "Flashlight," "Atomic Dog," "Nappy Dugout," "You're Getting A Little Too Smart," "(Not Just) Knee Deep," "Maggot Brain," "Free Your Mind & Your Ass Will Follow," "The Big Bang Theory," "Give Up the Funk (Tear the Roof Off the Sucker)," "The Mothership Connection (Star Child)" and "Cosmic Slop." Southfield Music, Inc. is the owner, in whole or in part, of the copyrighted musical compositions "Atomic Dog," "Maggot Brain" and  "The Big Bang Theory." Westbound Records is the owner of the copyrighted sound recordings "You're Getting A Little Too Smart," "Maggot Brain" and "Free Your Mind and Your Ass Will Follow." Reel Life Productions is responsible for at least two separate acts of infringement with respect to each of plaintiffs' works, i.e. the reproduction and the distribution of plaintiffs' works without permission.

7.      The musical compositions and sound recordings that are the subject of this action are of a genre of music known as "rap." In rap music, the artist typically speaks along with one or more pre-recorded musical compositions. To record the rap songs at issue, the rap artists copied portions of prior master sound recordings of plaintiffs' earlier musical compositions directly onto new sound recordings, and then the artists "rapped" on top, a procedure called

4

"sampling." Plaintiffs Bridgeport and/or Southfield are the owners of a catalogue of musical compositions of George Clinton, Parliament/Funkadelic and Ohio Players. Westbound is the owner of a catalogue of sound recordings of Funkadelic, Ohio Players and Detroit Emeralds. These compositions and sound recordings are widely recognized as the most extensively sampled by contemporary rap and hip-hop artists so much so that they are said to be the foundation of modern rap music. In my experience, given the sheer number of infringements by Reel Life Productions, it is readily apparent to me that defendant's infringements are willful.

8. I am aware that the Bridgeport and Southfield musical compositions and the Westbound sound recordings named in paragraph 6 were released by Reel Life Productions in the Infringing Sound Recordings of the Infringing Compositions on the Infringing Records identified in paragraph 3 above. Before the commencement of this action and again in preparation for the hearing on the default judgment, I personally conducted Internet searches to ascertain the availability of said infringing works. Since the initial release, and continuing to the present date, the Infringing Records "Life After Death," "Doubelieveingod," "Boomin' Words from Hell," "KKKill the Fetus," "Sunshine (Single)," "Judgement Day-Volume 1-Day," "Judgement Day-Volume 2-Night," "Bruce Wayne: Gotham City 1987" continue to be distributed, and are available for sale. For example, "Life After Death" and "KKKill the Fetus" can be found available for sale at www.amazon.com; a true and accurate copy of the relevant pages from Amazon.com is attached hereto as collective Exhibit A.

9. Due to the inability of plaintiffs to access actual income figures for this infringing work, Bridgeport, Southfield and Westbound elect statutory damages and respectfully request this Court to award $150,000.00 for each separate act of willful infringement against defendant Reel Life Productions, Inc, or a total monetary damage award of $4,650,000.00 for Bridgeport

Music Inc., $900,000.00 for Southfield Music, Inc. and $450,000.00 for Westbound Records, Inc. This award is reasonable when considering the potential earnings of a musical composition on a sound recording. A record that sells one million copies generates $80,000.00 in mechanical royalty income ($0.08 x 1 million), and approximately $300,000.00 to $400,000.00 in performance royalties alone for the music publishers and writers. Effective January 1, 2004, the U.S. statutory rate increased to $0.085 thus, allowing increased earnings. Record labels and/or entertainment companies earn substantial more than the statutory rate since the label sets the manufacturer's suggested retail price, which typically is between $15.98 to $18.98 per record album.

10. Bridgeport, Southfield and Westbound also request the Court to declare that they are the owner of 100% of the entirety of Reel Life Productions, Inc.'s ownership interest in the copyrights of the Infringing Sound Recordings of the Infringing Compositions, and the Infringing Records containing said infringing works as an unauthorized derivative works of Bridgeport, Southfield and Westbound's copyrighted works named hereinabove.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this ＿＿ day of February 2004 at Burlington, Vermont.

_____
Jane Peterer

6