UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIDGEPORT MUSIC, INC.,
SOUTHFIELD RECORDS, INC., and
WESTBOUND RECORDS, INC.,

    Plaintiffs,

vs.

RASHAAM A. SMITH a/k/a ESHAM A.
SMITH p/k/a ESHAM;
SCOTT SANTOS d/b/a JADED MUSIC;
REEL LIFE PRODUCTIONS, INC., and
OVERTURE MUSIC, LLC, individually and
d/b/a OVERCORE/GOTHOM RECORDS,
PSYCHOPATHIC RECORDS, INC., and
RED MUSIC DISTRIBUTION,

    Defendants.
_____/

Civil Action No.
03-cv-72211

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER**
**(1) DENYING NON-PARTY TILMON-JONES' MOTION FOR RELIEF FROM AN ORDER PURSUANT TO FED. R. CIV. P. 60(d)(3) (Dkt. No. 62);**
**(2) GRANTING PLAINTIFFS' MOTION TO STRIKE AND/OR PLACE DOCKET NUMBER 73 UNDER SEAL (Dkt. No. 77), and**
**(3) ORDERING THAT GREGORY J. REED SHOW CAUSE WHY HE SHOULD NOT BE SANCTIONED PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927 AND/OR <u>THE INHERENT AUTHORITY OF THE COURT</u>**

This is one of three actions in the United States District Court for the Eastern District of Michigan that has either been initiated by, or sought to be intervened into by non-party Janyce Tilmon-Jones ("Tilmon-Jones"), through her counsel, Jeffrey P. Thennisch, and co-counsel, Gregory

1

J. Reed.[1]  On October 24, 2011, Tilmon-Jones filed a Motion for Relief From the August 16, 2004 Orders of Default Judgment for Fraud Upon This Court Pursuant to Fed. R. Civ. P. 60(d)(3) and for Relief Pursuant to 28 U.S.C. § 1927.  (Dkt. No. 62.)  Bridgeport Music, Inc., Southfield Music, Inc., and Westbound Records, Inc. ("Plaintiffs") filed a Response on November 7, 2011.  (Dkt. No. 69.)

This is Tilmon-Jones' second attempt to set aside the Court's August 16, 2004 default judgments.  Tilmon-Jones' first attempt to vacate the judgments in this case was filed on March 9, 2011.  (Dkt. No. 37.)  That motion was fully briefed, including a Response (Dkt. No. 45), a Reply (Dkt. No. 46), a second Response (Dkt. No. 47), and a second Reply[2] (Dkt. No. 50).  The Court held a hearing on September 6, 2011, at which counsel presented oral argument for approximately 90 minutes.  The Court then allowed the parties to submit further briefing based on the application of *Jordon v. Gilligan*, 500 F.2d 701 (6th Cir. 1974), a case on which counsel for Tilmon-Jones relied for the first time at the hearing.  (Hr'g Tr. 37) (Dkt. No. 54.)  Tilmon-Jones and Plaintiffs both submitted additional briefing based on the *Jordon* opinion on September 13, 2011.  (Dkt. Nos. 55 and 56.)  Thus, the Court had heard and read abundant argument from both Plaintiffs and Tilmon-Jones, before ultimately denying Tilmon-Jones' Motion on September 27, 2011.  (Dkt. No. 57.)

Nevertheless, Tilmon-Jones filed a Motion for Reconsideration on October 11, 2011, in which she attempted to raise a different argument that she had not made in the prior extensive briefing.  (Dkt. No. 58.)  The Court denied reconsideration on December 12, 2011.  (Dkt. No. 78.)

---

[1] *See* Complaint, *Tilmon-Jones v. Bridgeport Music, Inc.*, No. 11-cv-13002 (E.D. Mich., filed Jul. 13, 2011) (ECF 1); Sealed Motion to Set Aside the September 6, 2007 Consent Order of Settlement, *Tilmon-Jones v. Boladian*, No. 06-cv-14048 (E.D. Mich., filed Nov. 1, 2011) (ECF 69).

[2] The second Response and Reply exceeded the maximum page limits as set forth in Eastern District of Michigan Local Rule 7.1(d)(3).

However, shortly after filing her Motion for Reconsideration, and before the Court had ruled on it, Tilmon-Jones filed her second Motion for Relief From the August 16, 2004 Orders of Default Judgment. In the instant Motion, Tilmon-Jones attempts to raise yet another challenge to the default judgments under Rule 60 that was unaddressed by her five prior briefs and 90 minutes of oral argument in this matter.

Tilmon-Jones also filed, on October 24, 2011, in connection with her Motion for Relief From the August 16, 2004 Orders of Default Judgment, the Declaration of Jeanne "Jane" Peterer Thompson (the "Peterer Declaration").[3] (Dkt. No. 64.) On October 26, 2011, Plaintiffs requested that the Peterer Declaration be placed under seal, because it contained disparaging accusations regarding Plaintiffs' counsel, including allegations of criminal and unethical behavior, discussed *infra*. (Dkt. No. 67.) The Court granted Plaintiffs' request and placed the Peterer Declaration under seal on November 3, 2011. (Dkt. No. 68.)

On November 8, 2011, Tilmon-Jones filed the Declaration of Gregory J. Reed Re: "Abbreviated List" of Artists Who Received Incorrect and Altered Statements From Bridgeport Music, Inc. According to Jeanne Peterer Thompson A/K/A Jane Peterer and Songwriters (the "Reed Declaration"). (Dkt. No. 70.) Like the sealed Peterer Declaration, the Reed Declaration also accuses Plaintiffs' counsel of various unethical and criminal acts. It also expresses Mr. Reed's disagreement with the Court's order sealing the Peterer Declaration, and at the same time serves as a means to circumvent the Court's sealing of the Peterer Declaration by again placing serious and disparaging accusations about Plaintiffs' counsel into the public record.

---

[3] The Peterer Declaration contains two different captions, one for the instant matter and one for the case *Tilmon-Jones v. Boladian*, No. 06-cv-14048, which is pending before Eastern District of Michigan Judge O'Meara.

On November 14, 2011, Plaintiffs filed a Motion to Strike and/or Place the Reed Declaration Under Seal and Request for a Hearing. (Dkt. No. 77.) In this Motion, Plaintiffs seek to have Mr. Reed called to this Court to explain his disregard for the Court's order to seal the Peterer Declaration. Counsel for Tilmon-Jones did not file a response.

For the reasons stated below, the Court will:

(1) DENY Non-Party Tilmon-Jones' Motion for Relief From the August 16, 2004 Orders of Default Judgment;

(2) GRANT Plaintiffs' Motion to Strike and/or Place the Reed Declaration Under Seal and Request for a Hearing, and

(3) ORDER that Gregory J. Reed show cause why he should not be sanctioned pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 and/or the inherent authority of the Court to sanction bad faith conduct in litigation. *Fharmacy Records v. Nassar*, 248 F.R.D. 507, 529 (E.D. Mich. 2008), *aff'd*, 379 Fed. Appx. 522 (6th Cir. 2010).

## I. BACKGROUND

### A. Ownership of "You're Getting a Little Too Smart"

The relevant background regarding Tilmon-Jones' attempted involvement in this case was discussed in the Court's September 27, 2011 Opinion and Order. Tilmon-Jones is not a party to this case, which is styled *Bridgeport Music, Inc., et al. v. Rasham A. Smith a/k/a Esham A. Smith p/k/a Esham, et al.* To summarize, Tilmon-Jones alleges that she is the rightful and legal owner of a number of musical compositions written by her deceased husband, Abrim "Abe" Tilmon, including the song "You're Getting a Little Too Smart." She further alleges that Plaintiffs, specifically Plaintiff Bridgeport, filed fraudulent copyright renewals claiming ownership of the Tilmon

compositions. Tilmon-Jones claims that she is entitled to any money that Plaintiffs have collected for the infringing use of "You're Getting a Little Too Smart" in the instant case. As noted *supra*, the Court denied Tilmon-Jones' first attempt to intervene in this case on September 27, 2011, holding that she lacked standing to bring a motion under Federal Rule of Civil Procedure 60(b).

**B. The Peterer Declaration**

According to the Peterer Declaration, Jane Peterer Thompson ("Peterer") is a former employee of Plaintiff Bridgeport. (Peterer Decl. ¶ 1.) Peterer states, *inter alia*, that when it filed the Complaint in the instant case, Plaintiff Bridgeport knew that it did not have legal title to the song "You're Getting a Little Too Smart," because Peterer told counsel for Plaintiff Bridgeport that it did not. (Peterer Decl. ¶¶ 16, 17.) Peterer also claims that Plaintiff Bridgeport has received money from the Defendants in this case after the Court's entry of default judgment in Plaintiffs' favor. At the September 6, 2011 hearing on Tilmon-Jones' first Rule 60(b) Motion, counsel for Plaintiffs denied that any money had been paid by Defendants in connection with the default judgments in this case.

Plaintiffs contend that Peterer is disgruntled and has a personal vendetta against Armen Boladian, the President and sole shareholder of Plaintiff Bridgeport. (Pls.' Mtn. to Strike and/or Seal, Ex. E, Boladian Decl. ¶ 16.) Boladian admits that Peterer formerly administered the copyrights for musical works owned by Plaintiff Brideport. (Boladian Decl. ¶ 7.) Boladian alleges that after his professional relationship with Peterer soured, he learned that Peterer was planning to leave the country with Plaintiff Bridgeport's copyright records, which would interfere with Bridgeport's ability to obtain royalties on its copyrights. (Boladian Decl. ¶ 11.) In January 2009, Boladian filed a lawsuit in Vermont, where Peterer was allegedly living, seeking to enjoin Peterer from absconding with Bridgeport's records. (Boladian Decl. ¶ 13.) However, Peterer allegedly eluded service of the

summons and flew to an unknown location in Europe with Bridgeport's records in her possession. (Boladian Decl. ¶ 15.)

Plaintiffs also deny that Peterer informed Plaintiff Brideport that it did not rightfully own "You're Getting a Little Too Smart" prior to filing the Complaint in this case. Plaintiffs claim that Peterer actually confirmed that Bridgeport could claim complete ownership of "You're Getting a Little Too Smart" in a May 26, 2003 fax. (Pls.' Resp., Ex. E, Busch Decl. ¶ 9.)

Regarding payments received by Plaintiff Bridgeport that are attributable to "You're Getting a Little Too Smart," Plaintiffs claim that their attempts to collect from Defendants have been unsuccessful. (Busch Decl. ¶ 17.) However, Plaintiffs state that their records from January 1, 2009, to June 30, 2011, reflect "income of $6.42 total from the Default Judgment at issue, 29 cents of which is attributable to the song involving 'You're Getting a Little Too Smart.'" (Busch Decl. ¶ 17.) Plaintiffs note that they cannot check for income for dates prior to January 1, 2009, because Peterer has absconded with those records.

## C. The Reed Declaration

On November 9, 2011, six days after the Court granted Plaintiffs' Motion to Seal the Peterer Declaration, Tilmon-Jones filed the Reed Declaration.[4] (Dkt. No. 73.) The Reed Declaration was not attached to any motion or response, and it does not contribute any information that was previously undisclosed to the Court in the sealed Peterer Declaration. The Reed Declaration does, however, summarize the allegations against Plaintiff Bridgeport that were made in the sealed Peterer Declaration.

---

[4]Attorney Gregory Reed entered an appearance as counsel for Non-Party Tilmon-Jones in this case on March 14, 2011. (Dkt. No. 40.)

## II. ANALYSIS

**A. Tilmon-Jones' Second Motion for Relief Under Rule 60**

In its September 27, 2011 Opinion and Order, this Court analyzed and discussed the following cases, which held that a non-party can have standing under Rule 60(b) under specific circumstances: *Southland v. Irons*, 628 F.2d 978 (6th Cir. 1980), *Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044 (2d Cir. 1982), *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773 (9th Cir. 1994), *In re Lawrence*, 293 F.3d 615 (2d Cir. 2002), and *Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180 (2d Cir. 2006). This Court noted the Sixth Circuit's holding in *Southland* that "a claim of fraud on the court may be raised by a non-party." *Southland*, 628 F.2d at 980. This Court then distinguished *Southland* and the other cases cited above from the instant matter, holding as follows:

> Although she asserts that Plaintiffs acted fraudulently in the instant case, Tilmon-Jones has fallen short of a strong showing that the default judgments were obtained by fraud. Moreover, Tilmon-Jones is fully able to sue Plaintiffs and have her rights to "You're Getting a Little Too Smart" fully adjudicated. Indeed, Tilmon-Jones has already filed a complaint, which is currently pending before Judge Friedman. Accordingly, Tilmon-Jones does not have standing and her Rule 60(b) Motion is dismissed.

(Sept. 27, 2011 Op. and Order 8.)

In her second Motion, Tilmon-Jones makes essentially the same argument as she did in her previous motion, but this time cites Rule 60(d)(3), which allows the Court to "set aside a judgment for fraud on the court." However, Tilmon-Jones again fails to show that the instant case is similar to any of the cases cited above, and therefore fails to establish that she has standing to bring a motion under Rule 60 as a non-party. Tilmon-Jones claims that the Peterer Declaration is sufficient evidence of fraud to warrant relief under Rule 60 and the reasoning in *Southland*.

> Fraud on the court consists of conduct: 1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court.

*Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010) (internal quotations and citation omitted). Tilmon-Jones bears the burden of proving "fraud on the court . . . by clear and convincing evidence." *Id*.

Tilmon-Jones has failed to produce clear and convincing evidence of fraud. The sealed Peterer Declaration states that Peterer told Plaintiffs' counsel that "You're Getting a Little Too Smart" was owned by the Tilmons, not Plaintiffs, prior to the filing of the June 9, 2003 Complaint in this matter. However, Plaintiffs have produced a letter from Jane Peterer to Plaintiffs' counsel, Richard S. Busch, dated May 26, 2003, that states as follows:

> Dear Richard,
>
> The following songs by NATAS and ESHAM contain unauthorized uses of our copyrights:
>
> . . . .
>
> Sample: "You're Gettin' A Little Too Smart"
> Master: Westbound Records, Inc.
> Sample Publ. Bridgeport Music Inc., Share owned: 100%

(Pls.' Resp., Ex. I, Peterer Letter 2, 5.)

Also, a Superior Court Judge in Vermont issued a temporary restraining order enjoining Peterer from removing any of Plaintiffs' business records from her place of business in Vermont, or from altering or destroying the records. (Pls.' Emergency Mot. to Seal, Ex. A) (Dkt. No. 67.) This supports Plaintiffs' contention that Peterer has a vendetta against Bridgeport, and that she absconded with Bridgeport's business records when she left Vermont.

Tilmon-Jones argues that Plaintiffs' counsel misrepresented to the Court that Plaintiffs had not received any money from the Defendants in this case. As evidence, Tilmon-Jones has produced a check for $48.74, from Broadcast Music, Inc., addressed to the United States District Court in Nashville, Tennessee, referring to the instant case number 03-72211. (Peterer Decl. Ex. 4, Check.) This document is not probative of fraud. The Court first notes that Broadcast Music, Inc., was not a Defendant in this matter, and it is unclear why it would issue a check on behalf of the named Defendants. In addition, this document may have been among the business records that Peterer had in her possession when she left the United States, and thus Plaintiffs' counsel should not be held accountable for their lack of knowledge regarding this possible payment.

Accordingly, the Court finds that Tilmon-Jones has failed to present clear and convincing evidence of fraud. Thus, even if Tilmon-Jones had standing under Rule 60, which she does not, the Court would have no basis for setting aside the default judgments in this case. Tilmon-Jones' motion is therefore denied.

## B. Plaintiffs' Motion to Strike and/or Seal

Plaintiffs request an order striking or sealing the Reed Declaration, as well as a show cause hearing requiring that Reed answer for his conduct in this matter. The Court will grant Plaintiffs' Motion to Seal the Reed Declaration, and in addition will schedule a show cause hearing with regard to attorney Gregory Reed's conduct in filing a declaration repeating scandalous matter that was previously sealed.

The Court may assess fees against an attorney who unreasonably and vexatiously multiplies litigation, pursuant to 28 U.S.C. § 1927. *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). "[W]hen an attorney knows or reasonably should know that a claim pursued is frivolous, or

that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney." *Id*. Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The Court may also impose sanctions in the form of attorney fees against a party where the party has acted in bad faith. *See BDT Products, Inc. v. Lexmark Intern., Inc.*, 602 F.3d 742, 752 (6th Cir. 2010). Bad faith that is sufficient for imposing sanctions requires "*something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* (emphasis in original). "Something more" can include a frivolous filing "for purposes of harassment or delay, or for other improper reasons." *Id*. (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)).

Indeed, United States District Judge David Lawson went so far as to dismiss a case filed by attorney Gregory Reed under the inherent authority of the Court, which "is an independent basis for sanctioning bad faith conduct in litigation," concluding that "plaintiffs and their attorney [Gregory Reed] have conducted a campaign of fraud. The list of abuses is extensive." *Fharmacy Records,* 248 F.R.D. at 530; *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002).

The record is sufficient for the Court to conclude in the instant case, that there appears to be no justification, other than to flout this Court's previous order sealing the Peterer Declaration, for

10

attorney Gregory Reed's Declaration repeating many of the Peterer allegations against Plaintiffs' counsel.

The Reed Declaration does not refer to "You're Getting a Little Too Smart," and does not provide any new evidence or information that supports Tilmon-Jones' claims in the matter before this Court.  Reed attached to his declaration 72 pages of royalty statements for Bridgeport clients, but none of the statements refer to Tilmon-Jones, nor are they of any relevance to the instant case.

In addition to being irrelevant, the Reed Declaration includes serious allegations of unethical conduct by Plaintiffs' counsel.  However, Reed's evidence for this alleged conduct consists entirely of the sealed contents of the Peterer Declaration.

It therefore appears that the only functions that the Reed Declaration can serve are to (1) circumvent the Court's order to seal the Peterer Declaration by summarizing its contents, and (2) make unproven allegations of wrongdoing against Plaintiffs' counsel part of the public record.  The Reed Declaration is thus not only frivolous, but appears to the Court to have been filed for wholly improper purposes.  Accordingly, attorney Reed is ordered to appear before this Court and show cause that his declaration in this matter (Dkt. No. 73) is non-frivolous and not in bad faith.

The Court sets Tuesday, March 13, 2012, at 2:00 p.m. for a hearing at which attorney Gregory Reed can appear to respond to this show cause order that can result in sanctions against him.

### III.  CONCLUSION

For the reasons stated above, the Court

(1) DENIES Non-Party Tilmon-Jones' Motion for Relief From the August 16, 2004 Orders of Default Judgment;

(2) GRANTS Plaintiffs' Motion to Strike and/or Place the Reed Declaration Under Seal and Request for a Hearing; and

(3) ORDERS that Gregory J. Reed show cause on Tuesday, March 13, 2012, at 2 p.m., why he should not be sanctioned pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, and/or the Court's inherent authority.

**SO ORDERED**.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 22, 2012

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 22, 2012.

S/Denise Goodine
Case Manager